**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| JAMES E ALGER, JR. and | ) Chapter 13 |
| DEBORAH J ALGER | ) Case No. 09-45282-MSH |
| | ) |
| Debtors | ) |
| | ) |
| | ) |
| JAMES E ALGER, JR. and | ) |
| DEBORAH J ALGER | ) |
| | ) |
| Plaintiffs | ) |
| | ) Adversary Proceeding |
| v. | ) No. 10-04005 |
| | ) |
| COUNTRYWIDE HOME LOANS, INC., MORTGAGE | ) |
| ELECTRONIC REGISTRATION SYSTEMS, INC., and | ) |
| BANK OF NEW YORK MELLON, F/K/A THE BANK OF | ) |
| NEW YORK, AS TRUSTEE FOR THE | ) |
| CERTIFICATEHOLDERS CWALT, INC., ALTERNATIVE | ) |
| LOAN TRUST 2006-11CB MORTGAGE PASS-THROUGH | ) |
| CERTIFICATES, 11CB | ) |
| | ) |
| Defendants | ) |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT**

Before me is the defendants' motion for summary judgment.   The facts underlying this

matter are largely undisputed.   On February 23, 2006 James and Deborah Alger refinanced the

mortgage on their home in Pepperell, Massachusetts with a $250,000 loan from Countrywide

Home Loans, Inc.   On that date Countrywide's closing attorney, Aleta Manugian, met with the

Algers to conduct the loan closing.   As part of the closing process, the Algers signed

acknowledgment forms attesting to their receiving copies of a notice of right to cancel (the

1

"Notice").   Ms. Manugian provided the Algers with copies of the Notice and other relevant

documents in a closing file.   Following the closing, the Algers took the closing file home and

placed it on a pile of papers they kept between two bureaus in their bedroom.   This pile included

family photographs, birth certificates, the Algers' marriage certificate, titles to motor vehicles, and

other documents.   There, say the Algers, the closing file sat unopened until some three-and-a-half

years later, in the spring of 2009, when in the course of preparing for their bankruptcy filing, the

Algers showed the closing file to their attorney.   The Algers allege that upon opening it the

attorney discovered it contained not four but three Notices.

On September 28, 2009 the Algers notified Countrywide and Mortgage Electronic

Registration Systems, Inc. ("MERS"), the named mortgagee under the mortgage securing the

Algers' obligations to Countrywide, of their intention to rescind the loan transaction pursuant to

§ 10(a) of the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen.

Laws ch. 140D.   Neither Countrywide nor MERS agreed to the rescission.

On December 11, 2009, the Algers filed their petition under chapter 13 of the Bankruptcy

Code (11 U.S.C. § 101, *et seq.*), commencing the main case.   They then instituted this adversary

proceeding against Countrywide and MERS on a one-count complaint alleging violation of § 10(a)

of the MCCCDA.   The Algers amended their complaint to include as a co-defendant Bank of New

York Mellon in its capacity as trustee of the trust established in connection with the securitization

of their loan.   Thereafter, the defendants, Countrywide, MERS, and Bank of New York Mellon,

filed their joint motion for summary judgment.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue of material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 65(c), made applicable by Fed. R. Bankr.

P. 7065. A "genuine" issue is one supported by such evidence that "a reasonable jury, drawing

favorable inferences," could resolve in favor of the nonmoving party. *Triangle Trading Co. v.

Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.,* 76 F.3d

413, 427 (1st Cir. 1996)). A fact is "material" if it has "the potential to change the outcome of the

suit" under governing law if such fact is found in favor of the nonmovant. *McCarthy v. Nw.

Airlines, Inc.* 56 F.3d 313, 314-15 (1st Cir. 1995).

The defendants bear the initial responsibility to inform the court of the basis for their

motion and to identify "those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any," which they believe demonstrate the

absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). When, as in this case, the Algers have the burden of proof on the underlying complaint,

the defendants need do no more than aver an absence of factual support for the Algers' case. The

burden of production then shifts to the Algers, who, to avoid summary judgment, must establish

the existence of at least one question of fact that is both "genuine" and "material." *Desmond v.

Varrasso*, 37 F.3d 760, 763 n.1 (1st Cir. 1994) (citations omitted).

The Algers bring their claim under § 10(a) of the MCCCDA. The MCCCDA was

"closely modeled" after the federal Truth in Lending Act ("TILA"). *In re DiVittorio*, -- F.3d --,

2012 WL 33063, at *7 (1st Cir. Jan. 6, 2012). As the two acts are "substantially the same in most

respects . . . federal court decisions with respect to TILA are instructive in construing the parallel

provisions of the CCCDA." *In re Cromwell*, 2011 WL 4498875, at *10 (Bankr. D. Mass. Sept.

27, 2011). Both TILA and the MCCCDA were enacted "to assure a meaningful disclosure of

3

credit terms so that the consumer [would] be able to compare more readily the various credit terms

available to him and avoid the uninformed use of credit, and to protect the consumer against

inaccurate and unfair credit billing and credit card practices."   15 U.S.C. § 1601(a); *see also In re*

*Cromwell*, 2011 WL 4498875, at \*10.

Under the MCCCDA, consumer borrowers involved in certain credit transactions where

the lender acquires a security interest in the borrower's principal dwelling[1]  are given a limited

right to rescind the transaction:

> [T]he obligor shall have the right to rescind the transaction until midnight of the
> third business day following the consummation of the transaction or the delivery of
> the information and rescission forms required under this section together with a
> statement containing the material disclosures required by this chapter, whichever is
> later, by notifying the creditor, in accordance with regulations of the commissioner,
> of his intention to do so. . . .

Mass. Gen. Laws ch. 140D, § 10(a).   To ensure that a borrower is aware of his right to rescind,

§ 10(a) requires that the creditor provide to the borrower, "in accordance with the regulations of

the commissioner, appropriate forms for the obligor to exercise his right to rescind any transaction

subject to this section."   The regulations of the commissioner, 209 CMR § 32.23 (2005), direct the

creditor: (i) to "provide a notice that conforms with the model forms in Appendix H of Regulation

Z, as appropriate, or a substantially similar notice"[2]; and (ii) to deliver two copies of the notice of

---

[1]  Select transactions are exempt from the borrower's right to rescind, including residential
mortgage transactions (defined in Mass. Gen. Laws. ch. 140D, § 1), refinancing and consolidation
transactions by the same creditor with no new advances, and transactions where the creditor is a
state agency.   Mass. Gen. Laws ch. 140D, § 10(e); 209 CMR § 32.23(6).   There is no dispute that
the Algers' transaction with Countrywide is subject to the rescission requirements of the
MCCCDA.

[2]  209 CMR § 32.23(2)(b).   Regulation Z (12 C.F.R. pt. 226), the federal analog to 209 CMR pt.
32, is an interpretive regulation prescribed by the Federal Reserve Board which governs the
disclosure provisions under TILA.   *In re DiVittorio*, 2012 WL 33063, at \*7 (1st Cir. Jan. 6, 2012).

the right to rescind to each consumer entitled to rescind."[3]   The regulation further provides that

"[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire

four years after consummation, upon transfer of all the consumer's interest in the property, or upon

the sale of the property, whichever occurs first."[4]

The Algers say that Countrywide's failure to provide them at the loan closing with four

copies of the Notice triggered their extended right to rescind under 209 CMR § 32.23(1).   The

defendants, on the other hand, argue that the Algers did in fact receive the correct number of

Notices and acknowledged such receipt, but even if they had not received four copies, the

extension of the right to rescind beyond three business days was not triggered because they each

received at least one Notice.

The parties differ in their interpretation of § 10(a) of the MCCCDA and its corresponding

regulations.   Defendants rely on a line of cases from the district of Massachusetts, beginning with

*King v. Long Beach Mortgage Company*, holding that an extension of the right to rescind under

TILA is not triggered so long as each borrower receive at least one Notice.   *See* 672 F. Supp.2d

238 (D. Mass. 2009).   In *King*, Judge Young held that because the Federal Reserve "used the

terms 'notices' or 'two copies of the notice' whenever it wished to convey that more than one

notice was required,"[5]   the use of the singular "notice" in 12 C.F.R. § 226.23(a)(3), the federal

analog to 209 CMR § 32.23(1)(c), is indicative of the Federal Reserve's intent that the delivery of

---

[3]   209 CMR § 32.23(2)(a).

[4]   209 CMR § 32.23(1)(c).

[5]   *See, e.g.,* 12 C.F.R. § 226.19(b)(2)(xi) ("The type of information that will be provided in notices of adjustments and the timing of such notices.").   The corresponding regulation set forth by the Massachusetts commissioner is 209 CMR § 32.19(2)(b)(11).

a single notice was sufficient so as not to trigger the extended right to rescind beyond three

business days.   *King*, 672 F. Supp.2d at 250.   Three subsequent Massachusetts federal district

court decisions have, without further elaboration, endorsed the holding in *King*.   *See Ferreira v.*

*Mtg. Elec. Reg. Systems, Inc.*, 794 F. Supp.2d 297 (D. Mass. 2011); *McKenna v. Wells Fargo*

*Bank, N.A.*, 2011 WL 1100160 (D. Mass. March 21, 2011); *McDermott v. Mtg. Elec. Reg. System*,

2010 WL 3895460 (D. Mass. Sept. 30, 2010).

The Algers insist that the Massachusetts district court cases relied on by the defendants are

outliers, at odds with court rulings elsewhere and insufficiently attuned to the plain meaning of the

statute and regulations.[6]   They urge me to adopt Judge Hillman's reasoning in *In re Cromwell*,

2011 WL 4498875 (Bankr. D. Mass. Sept. 27, 2011), that the statute requires the delivery of

multiple Notices per borrower and that the extended right to rescind under the regulation is

triggered when two Notices are not provided:

> Having reviewed *King* thoroughly, I must respectfully disagree with Judge
> Young's conclusion.   Notwithstanding the fact that the regulations provide that
> "[t]he consumer may exercise the right to rescind until midnight of the third
> business day following . . . delivery of the *notice* required by 209 CMR
> 32.23(1)(b)," the statute uses the plural: "the obligor shall have the right to rescind
> the transaction until midnight of the third business day following . . . the delivery of
> the information and *rescission forms* required under this section . . ."

*Id.* at *16 (emphasis in original).

---

[6] *See, e.g.*, *Weeden v. Auto Workers Credit Union, Inc.*, 173 F.3d 857 (6th Cir. 1999)
(unpublished) (noting "the creditor's obligation to provide each borrower with two notices of the
right to cancel" and "the three-year extension of the right to rescind upon failure to provide these
notices"); *Briscoe v. Deutsche Bank Nat. Trust Co.*, 2008 WL 4852977, at *3 (N.D. Ill. Nov. 7,
2008) ("A failure to provide two copies of the Notice of the Right to Cancel is grounds for
rescission."); *Hanlin v. Ohio Bldrs. & Remodelers, Inc.*, 212 F.Supp.2d 752, 759-60 (S.D. Ohio
2002) (following *Weeden*); *Cooper v. First Gov't Mtg. & Invest. Corp.*, 238 F.Supp.2d 50, 64
(D.D.C. 2002) (rejecting lender's argument that "providing one copy of the Notice Form
demonstrates substantial compliance with TILA, and therefore is sufficient").

Judge Hillman's analysis in *In re Cromwell* is compelling. Section 10(a) of the

MCCCDA requires forms, plural, to be provided by the creditor and the regulation requires two

copies and provides an extended right to rescind when the creditor fails to provide proper notice.

*See also In re Giza*, 458 B.R. 16, 25-26 (Bankr. D. Mass. 2011) (Boroff, J.). The regulation of the

commissioner, 209 CMR § 32.23(1)(c), should be interpreted, if at all possible, in harmony with its

companion statute and regulations. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) ("[A]

word is known by the company it keeps."). The word "notice" in 209 CMR § 32.23(1)(c) is not

referring to the Notice form but to the act of giving notice. Proper notice under 209 CMR §

32.23(2)(a) means the delivery of "two copies of the notice of the right to rescind," to each

borrower entitled to rescind which "clearly and conspicuously" disclose the right to rescind and

how to exercise that right.

The defendants correctly note that the Court of Appeals for the First Circuit has adopted a

"clear and conspicuous standard in place of a rule of hyper-technicality" when it comes to a

lender's disclosing a borrower's rescission rights. *Santos-Rodriguez v. Doral Mortg. Corp.*, 485

F.3d 12, 16-17 (1st Cir. 2007); *see also In re DiVittorio*, 2012 WL 33063, at *18. However, this

admonition cannot extend to an unambiguous statutory requirement. Strict enforcement of the

statute's multiple-forms requirement and the regulation's explicit directive that creditors are to

deliver two Notices to each borrower is not a trespass into the realm of hyper-technicality

circumscribed by the First Circuit. There is a good reason for the two-Notice requirement and

that is so a consumer borrower can, with minimal effort or unnecessary delay, exercise the right to

rescind by returning one form of the Notice and still have a copy for his records.[7] Thus, if

---

[7] Each borrower is entitled to independently exercise his or her right of rescission: "When more

Countrywide failed to provide each of the Algers with two Notices of the right to rescind, for a total of four,[8] the Algers' right to rescind would be extended to four years beyond the closing date.

It is undisputed that Mr. and Ms. Alger each signed two forms acknowledging their receipt of the Notice.   However, the MCCCDA ascribes limited evidentiary weight to such acknowledgments:

> Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

Mass. Gen. Laws ch. 140, § 10(c).   Thus the acknowledgment forms signed by the Algers operate only as a rebuttable presumption that they in fact received the required documents.

Each acknowledgment form that the Algers signed contained the following language: "The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement."   It is unclear whether the Algers acknowledged that each of them received two copies for a total of four or whether they each acknowledged receipt of two copies in total.   In analyzing the identical acknowledgment language in *In re Cromwell*, Judge Hillman, too, found the language ambiguous:

> The placement of the word "each" before "acknowledge" renders the phrase susceptible to two meanings.   First, that the Debtors acknowledged each receiving two copies as the Defendants[] assert, or second, that they each acknowledged receipt of a total of two copies as the Debtors suggest.   While I understand that Countrywide intended the former as that is what the law required, the average consumer would not have necessarily known that.

---

than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers."   209 CMR § 32.23(1)(d).

[8] Each consumer who is a party to a transaction is entitled to receive two copies of the Notice: "In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to *each* consumer entitled to rescind." 209 CMR 32.23(2)(a) (emphasis added).

2011 WL 4498875, at *17.   The existence of this ambiguity neutralizes any presumption created

by the acknowledgment in favor of delivery of the requisite number of Notices.   *See id.* (resolving

the ambiguity "against the drafter of the Acknowledgment such that it did not create a presumption

of adequate delivery of a total of four copies").

In the absence of a presumption of adequate delivery, the burden shifts to the defendants to

prove that the Algers each received two copies of the Notice for a total of four for the couple.   *See

id*.   While the defendants rely on the deposition testimony of Ms. Manugian as evidence of her

general practice during closings to establish that the Algers received four copies, the Algers have

attested through their affidavits that the first time their loan file was opened after the closing it

contained a total of three Notices.   The question of how many copies of the Notice the Algers

received remains a genuine and material fact in dispute.   The defendants' motion for summary

judgment is therefore DENIED.

At Worcester, Massachusetts this 24th day of January, 2012.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Kenneth Quat, Quat Law Offices
Cambridge, MA
for the Plaintiffs

Chad W. Higgins, Goodwin Procter
Boston, MA
for the Defendants

9